23

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED
OCT 10 2001
CHARLES R. FULBRUGE III
CLERK

No. 00-40866

CAB-00-22

United States District Court
Southern District of Texas
FILED
DEC 06 2001
Michael N. Milby
Clerk of Court

In the Matter of:   MILTON VAN GERPEN,

Debtor,

SECURITY STATE BANK

Appellant,

versus

INTERNAL REVENUE SERVICE,

Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before POLITZ and BARKSDALE, Circuit Judges, and FALLON,* District Judge.

POLITZ, Circuit Judge:

Security Bank appeals the district court's conclusion that the statutory term "commences distribution," in the context of a Chapter 7 liquidation, means the date

---

*Honorable Eldon E. Fallon, United States District Judge for the Eastern District of Louisiana, sitting by designation.

when a bankruptcy court approves the trustee's final report. For the reasons assigned, we affirm.

## BACKGROUND

On May 21, 1997, debtor Milton Van Gerpen filed a Chapter 7 bankruptcy petition. On August 11, 1997, the trustee assigned to Van Gerpen's estate retained a law firm, Waldron & Schneider, P.C., to perform legal services on behalf of the estate. The law firm subsequently filed an interim application for compensation, which was granted by the bankruptcy court on December 5, 1997, and paid by the trustee on January 2, 1998. Other interim compensation payments were also subsequently approved and paid. On March 17, 1998, the bankruptcy court issued a notice informing creditors that there may be assets in the estate available for distribution, and it set a claim bar date of June 15, 1998.

On January 4, 1999, Van Gerpen filed two proofs of claim on behalf of the IRS, and the IRS submitted a further claim on January 15, 1999. The bulk of the IRS claims were entitled to priority status under provisions of the Internal Revenue Code. Another creditor, Security State Bank, objected to these claims, asserting that they were untimely under the court's previous deadline order and therefore not eligible for priority status. The IRS responded, contending that the claims were made before the

trustee had commenced distribution of the estate and, under 11 U.S.C. § 726(a)(1), were entitled to priority status.[1]

The bankruptcy court held a hearing on the objections at which Security claimed that the trustee had, in fact, commenced distribution of the estate by making interim compensation payments to the law firm out of estate assets, as well as paying other expenses incurred by the trustee in the administration of the estate.[2] In its dispositive order[3] the bankruptcy judge simply stated, without explanation, that the trustee had not commenced distribution and overruled the objections.

Security appealed the ruling of the bankruptcy judge to the district court. In its Final Judgment Affirming the Ruling of the Bankruptcy Court, the district court noted that the only case of record considering when a trustee "commences distribution" interpreted the phrase to mean the date when the bankruptcy judge approves the

---

[1] 11 U.S.C. § 726(a)(1) states:
Except as provided in section 510 of this title, property of the estate shall be distributed –
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section[.]

[2] In addition to the law firm payments the trustee had, with court approval, paid a commission to a broker who facilitated the sale of an airplane partnership interest held by Van Gerpen, and paid certain bond premiums that came due.

[3] In re Van Gerpen, 245 B.R. 513 (Bankr. S.D. Tex. 1999).

3

trustee's final report and accounting.[4] The district court observed that many routine administrative expenses arise in a bankruptcy case, often, as here, before notice is sent out to creditors informing them of the date by which they must file their claims. The court found that an interpretation such as that proposed by Security, *i.e.*, that a trustee commences distribution whenever he or she makes any disbursement of estate monies, effectively would render the provision allowing for tardy claims nugatory. Because no final report had been filed when the IRS filed its tardy claims, under the court's interpretation of the statutory language the claims qualified for priority status. Security timely appeals this ruling.

## ANALYSIS

This appeal requires that we review the district court's interpretation of the statutory phrase "commences distribution," a question of law which we examine *de novo*.[5] This apparently is a *res nova* issue before any federal appellate court.

The statute does not define the words "commences distribution" and courts generally assume that undefined statutory terms carry their ordinary and natural meaning.[6] Security contends that by merely applying the dictionary definitions of

---

[4] Citing In re Wilson, 190 B.R. 860 (Bankr. E.D. Mo. 1996).

[5] Woodfield v. Bowman 193 F.3d 354 (5th Cir. 1999).

[6] In re Pro-Snax Distributors, Inc., 157 F.3d 414, 425 (5th Cir. 1998)(citing Stanford v. Commissioner, 152 F.3d 450 (5th Cir. 1998)). See also United States v.

4

"commences" and "distribution" the court should find that the statutory phrase here translates to "the first act of giving out money of the estate." While such a simple approach might, at first blush, appear both rational and correct, on closer examination it is clear that such would ignore the context within which the terms exist. In bankruptcy law the term "distribution" carries a particular meaning, to the extent that it borders on being a term of art. A well-known treatise on bankruptcy law notes that "[n]ormally the *distribution* [of a bankrupt estate] is carried out by the Chapter 7 trustee, *after the trustee has reduced the estate to cash by liquidating the debtor's nonexempt assets*."[7] Distribution, as used in the context of a Chapter 7 liquidation under bankruptcy law, is markedly different from the disbursement of estate funds to pay administrative expenses incurred by the trustee in the process of converting estate assets to cash.[8]

An experienced bankruptcy judge, discussing when interest was due creditors

---

Alvarez-Sanchez, 511 U.S. 350, 357 (1994).

[7] 6 COLLIER ON BANKRUPTCY ¶ 726.01 at 726-5 (15th Ed. Rev. 2000) (emphasis added).

[8] The sale of the partnership interest in the airplane in this case is a perfect example. The trustee sold the property interest for cash, which was then available for distribution to creditors. In doing so the trustee incurred a commission expense, but disbursing estate funds for such routine liquidation expenses does not equate with "distributing" the estate itself, as the term is used in bankruptcy law.

on their claims, distinguished between interim "disbursements, dispositions and turnovers of monies" and the final "distribution" of the estate, noting that:

> [interest] is limited to those claims paid under the provisions of § 726(a), that is, within the confines of the final distribution which, functionally, must provide a recapitulation of all disbursements, dispositions and turnovers of monies. Therefore, while the payments made on account of compensation and other administrative expense applications must be accounted for, it is not necessary that they be claims paid within the final distribution.[9]

While the issues in that case are not at issue at bar, those comments illustrate the particular import the term "distribution" carries in bankruptcy law.

In the case cited by the court *à quo*, In re Wilson, the judge there stated that the "[t]rustee commenced the *process* of distribution when he submitted the Final Report to the [United States Trustee] for its approval."[10] It is unclear whether there were any interim disbursements for administrative expenses, *e.g*, bond premiums due, that were paid prior to the submission of the report in that case, but even if there were no such payments, it is clear that the judge considered "distribution" to apply only to the final liquidation of the estate. The court stated: "It is only after the Court resolves any

---

[9] In re Vogt, 250 B.R. 250, 282 (Bankr. M.D. La. 2000).

[10] In re Wilson, 190 B.R. at 862.

6

objections to the Trustee's Final Report and signs the order approving the report that the proposed distribution becomes the approved distribution."[11]

We also agree with the district court that any other interpretation would result in the virtual evisceration of the statutory provision permitting tardy claims to be filed. Because trustees need not provide notice before paying administrative expenses that are less than $500,[12] creditors have no universally prudent and acceptable way of knowing when such expenses are paid until the trustee submits the final report. Under the interpretation proposed by Security, the first such expense payment made would preclude any further tardy claims from being filed, even though few creditors, if any, knew or reasonably could know of that preclusion. And it is not beyond peradventure, rather the opposite, that such minor expenses would arise and be paid shortly after the trustee assumes control of the bankrupt estate, thereby effectively precluding tardy claims. We cannot accept, absent specific statutory language or clear legislative history, that Congress intended to consign the decision over whether and when tardy claims may be filed to such an elusive basis. We are persuaded that the appropriate interpretation of "commences distribution," under the totality of the present

---

[11] Id.

[12] FED. R. BANKR. P. 2002(a)(6) requires that notice be given to the debtor and other interested parties only when applications for compensation or reimbursement made against the estate are greater than $500.

7

bankruptcy law, is the date when a bankruptcy court approves the trustee's final report, thus allowing the trustee to commence final distribution of the estate.[13]

For these reasons the ruling of the district court is AFFIRMED.

---

[13] The record and briefs inform us that Congress is presently considering thi well as other, bankruptcy matters.